## W. J. Moore, Jr., et al v. Minnie M. Johnson.

### No. 1452.

**1.  Homestead—Abandonment—Return.**

Acquisition of a new homestead is not absolutely essential to abandonment of homestead rights. Where the testimony supported a finding that a husband and wife had removed from the State with the intention not to return existing at the time execution was levied on their homestead, they had abandoned their rights and could not defeat the levy by returning and reoccupying it.

**2.  Execution Sale—Advertisement.**

Failure to advertise an execution sale as required by law will not defeat the title of a purchaser, though bought by the plaintiff in execution and for an inadequate price.

**3.  Evidence—Witness' Understanding.**

On a question of abandonment of homestead by husband and wife, the latter had testified that K. knew of their intentions in removing from the homestead. It was proper to permit the opposite party to prove by K. that she understood and believed their removal was to be permanent, though she could not recall that either of them had explicitly so stated.

**4.  Trespass to Try Title.**

It was proper to render judgment for the land against a defendant who had answered only by a general demurrer, though no proof connected her with the property.

Appeal from Llano.  Tried below before Hon. W. M. Allison.

*W. T. Dalrymple* and *Chas. L. Lauderdale,* for appellants.—1.  When

it is conclusively shown that for many years prior to, and up to a short time before, the levy of the execution the property in controversy was the family residence homestead of defendant in execution, the head of the family, and that, at the time of the levy, he had acquired no other homestead, though the defendant, leaving all his household effects in the residence, the property in controversy, had taken his family to, and was temporarily residing with them, and temporarily engaged in business at another place, the property cannot be subjected to the execution, except upon clear and satisfactory evidence that defendant had actually vacated and left the old homestead with a definite and fixed intention not to return, and this intention cannot be established by evidence showing that, having actually left such household effects in the residence and gone to and engaged in such business at such other place, he intended not to return to and occupy the old home as his homestead if he could convert it into, or exchange it for another homestead, but in case he could not so convert or exchange it, he would resume his actual occupation and use of it as his family residence homestead, nor does the proof of declarations that he would not any more live in the town where the property is situated, in connection with such evidence, prove abandonment. Graves v. Campbell, 74 Texas, 576 (579); Cox v. Harvey, 1 Texas U. C., 275; Sanders v. Sheran, 66 Texas, 655; Shepherd v. Cassiday, 20 Texas, 25; Gouphenant v. Cockrell, 20 Texas, 96.

2. In an action of trespass to try title, it appearing that plaintiff claims title through execution sale against defendant and clearly appearing that up to within a short time before the levy the property was the family residence homestead of defendant, who claims that it was such at the time of the levy, and who has acquired no other, before the property can be subjected to the execution it must be proved by clear and satisfactory evidence that he has left it with a definite and fixed intention not to return to or again use it as such homestead. Same authorities.

3. The evidence clearly showing that plaintiff claims title to the property in controversy through an execution sale thereof under an execution issued on a judgment recovered by said plaintiff, and for plaintiff's use; that at said sale said plaintiff became the purchaser of said property at a merely nominal price; that under said execution said property was not advertised for sale "once a week for four consecutive weeks immediately preceding said day of sale," and was not advertised at all immediately preceding said day of sale, and all this being shown by the return indorsed on said execution, the court erred in refusing to hold the said sale invalid and to grant defendants a new trial on that ground. Weaver v. Nugent, 72 Texas, 273; Irvin v. Ferguson, 83 Texas, 494; Hayden v. Dunlap, 3 Bibb., 216; Collins v. Smith, 57 Wis., 284; Eaton v. Lyman, 33 Wis., 37; Henderson v. Hays, 41 N. J. L., 387.

4. In an action of trespass to try title, where plaintiff claims title through an execution sale against defendant, who claims the property as exempt residence homestead under the homestead laws, the issue then

being whether or not, at the time of the levy, defendant had abandoned the property as his homestead, and where it has been proved that defendant had moved away with his wife, from the homestead, but he claims the removal was only temporary and not with any definite and fixed intention to remain permanently away or to abandon the homestead, though the cause was tried by the judge without a jury, it was error, over the objections of defendant, made and reserved in due form, to permit a witness to testify that "I understood and believed that such removal was to be permanent, but I do not recall any conversation in which either of them explicitly so stated." Graves v. Campbell, 74 Texas, 579; Wagoner v. Ruply, 69 Texas, 704-6; Deweese v. Bluntzer, 70 Texas, 408; Graves v. Campbell, 74 Texas, 580; Moore v. Kennedy, 81 Texas, 147.

5. The court erred in rendering judgment against the defendant, A. M. Justus, for the land in controversy, because there was no evidence of title to the land down to the plaintiff, and there was no evidence that plaintiff and said defendant claimed said land through a common source. Sebastian v. Martin Brown Co., 75 Texas, 291.

*Slater, McLean & Spears*, for appellee.—1. A homestead right may be abandoned without first acquiring a new home, and the evidence in this case clearly shows that W. T. Moore, Jr., and his wife, Ida Moore, left the premises in controversy on the 20th day of June, 1894, with the intention never to return, and the said premises thereupon became subject to appellee's judgment lien and execution, and the court did not err in rendering judgment for appellee. Homestead may be abandoned before a new one is acquired: Reece v. Renfro, 68 Texas, 194. Effect of conveyance of homestead—real or simulated: Taylor v. Ferguson (Texas), 26 S. W. Rep., 47; Cox v. Shropshire, 25 Texas, 123; Portwood v. Newberry, 79. Texas, 339; Baines v. Baker, 60 Texas, 140-41; Edmonson v. Blessing, 42 Texas, 597; Beard v. Blum, 64 Texas, 62. Effect of declarations by deed or otherwise: Parker v. Campbell, 21 Texas, 763; Portis v. Hill, 30 Texas, 561. Effect of moving from the state: Reece v. Renfro, 68 Texas, 194; Jordan v. Godman, 19 Texas, 275. The question of abandonment depends upon facts in each case: Prufrock v. Joseph (Texas), 27 S. W. Rep., 264.

2. A conflict of evidence upon an issue of abandonment of a homestead submitted to the court trying a cause will not be considered on appeal with a view of determining the preponderance of testimony. Not the quantity of evidence, but its character and credibility, should be looked to, and if there be evidence sustaining a finding by the trial judge it will not be disturbed on appeal. Krohn v. Heyn, 77 Texas, 319.

3. The execution sale under which appellee claims the land in controversy was in all things regular and in conformity with the requirements of law as shown by the return on said execution. Laws 23d Leg. (1893), ch. 15, p. 11; Crabtree v. Whiteselle, 65 Texas, 113; 2 Freeman on Executions, sec. 286.

4. The court did not err in admitting that part of Mrs. Maggie Kirk-

patrick's testimony complained of in appellant's third assignment of error and proposition thereunder, because her whole testimony taken together with other testimony in the case, shows that she knew the intention of the Moores; did not give her "opinion," but gave the substance of her knowledge and information.   Swenney Green & Co. v. Booth, 28 Texas, 116-117;  Simpson v. Brotherton, 62 Texas, 172.

5.   If the admission of the testimony complained of in appellant's third assignment of error and proposition thereunder was error, it was immaterial error, and not cause for reversal, for the reason that in the absence of such testimony the great preponderance of the testimony in the case is in support of the judgment of the court.   Behan v. Ghio, 75 Texas, 90;  Melton v. Cobb, 21 Texas, 543;  Clayton v. McKinnon, 54 Texas, 211;  Moore v. Kennedy, 81 Texas, 147;  Dignan v. Shields, 51 Texas, 327-8;  Lindsay v. Jaffray, 55 Texas, 640;  Hunt v. Makemson, 56 Texas, 14;  McGaughey v. Meek, 1 App. C. C., 1195;  Henry v. Fay, 2 App. C. C., 836;  Railway v. Ticer, 3 App. C. C., 403;  Cairrell v. Higgs, 1 Posey U. C., 64;  1 Greenleaf on Evidence, sec. 49.

6.   The court did not err, as complained in appellant's fourth assignment of error, in rendering judgment against A. M. Justus, together with the other appellants, for the reason that said A. M. Justus never answered in the cause and thereby confessed every material allegation in the petition.   Clark v. Compton, 15 Texas, 32;  Ricks v. Pinson, 21 Texas, 508;  Kimmarle & Hirsh v. Railway, 76 Texas, 694.

7.   The point raised in appellant's second assignment of error, that notice of sale at which plaintiff purchased was not properly given, being raised, for the first time, on motion for a new trial, the court erred in refusing, upon the objection of appellants, to allow appellee to prove that the notice of sale was in fact published four times, viz: July 12, 19 and 26, and August 2, 1894, the sale taking place on the 7th day of August, 1894, as shown by plaintiff's bill of exception No. 3.   That proper notice was given may be proved by parol:   2 Freeman on Executions, sec. 286, latter part of section.

KEY, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought by appellee against W. T. Moore and his wife, Ida Moore, and T. P. Justice, and his wife, A. M. Justice.   A general demurrer was filed in the court below by counsel signing as "attorneys for defendants;" and they also filed a general denial and plea of not guilty, signing as "attorneys for defendants W. T. & Ida Moore and T. P. Justice."   No answer to the merits was filed by A. M. Justice.   Judgment was rendered for the plaintiff and the defendants have appealed.

The trial court filed the following conclusions of fact:   "1.   In cause No. 919 in this court, on May 24, 1894, plaintiff herein recovered a judgment against W. T. Moore, Jr., one of the defendants in this suit, for the sum of $3145.49, with interest and costs of suit, and said judgment has not been paid.

"2.   On May 24, 1894, plaintiff filed an abstract of said judgment in

the office of the clerk of the County Court of said Llano County, and caused the same to be recorded and indexed as required by law on the same day it was filed for record, to-wit: May 24, 1894.

"3. On July 10, 1894, plaintiff sued out an alias execution under said judgment, and the sheriff of Llano County levied said writ on the property in controversy on the same day, and after advertising the same for the time and in the manner required by law, sold it to plaintiff, on the first Tuesday in August, 1894.

"4. In pursuance of said sale, said sheriff executed, acknowledged and delivered to plaintiff his deed, dated August 7, 1894, conveying to her the interest of W. T. Moore, Jr., in the property in controversy which he had on July 10, 1894, or at any time afterwards; said deed was filed for record in said Llano County, August 10, 1894.

"5. Defendants W. T. Moore, Jr., and Ida Moore, his wife, have been married fifteen years, and have four children; they resided upon the property prior to June 20, 1894. Defendant W. T. Moore, Jr., had for some years been engaged in the banking business in Llano up to about May 1, 1894, when he sold his interest in the banking business to W. O. Richardson for $10,000 cash, and $31,250 assumed by said Richardson, and to be paid by him to creditors of Moore, to whom said stock was hypothecated. After sale of bank stock, Moore closed out his business relations in Llano.

"6. June 19, 1894, defendants Moore and his wife executed a general warranty deed, acknowledged in the manner provided by law for conveying the homestead, and delivered same to T. P. Justice, one of the defendants herein, conveying to him the property in controversy; the deed recited a consideration of $250 cash and three notes, one for $750 and two for $1000 each, due in twelve, eighteen and twenty-four months after date, respectively, and retained the vendor's lien to secure the payment of said notes. It was the intention of the parties that no part of the consideration should be paid by Justice, and no part of it was paid. In addition to the usual terms and conditions of a vendor's lien note, each of the notes above mentioned contained the following provision, to-wit: 'It is also further specially agreed and understood that should I fail to pay this note at its maturity, and suit is brought for the purpose of enforcing its payment, then, in that event, no personal judgment can be obtained against me, and no other proceeding shall be had except to foreclose said vendor's lien and the sale of the said property, and the proceeds of sale applied to the payment of this note, and the interest thereon due.'

"7. Contemporaneously with the execution and delivery of the aforesaid deed and notes, defendants W. T. Moore, Jr., and Justice executed in duplicate and delivered the following agreement in writing, to-wit:

" 'Llano, Texas, June 19, 1894.

" 'This agreement entered into by and between W. T. Moore, Jr., of the first part, and T. P. Justice of the second part, witnesseth: That

W. T. Moore, Jr., has sold to T. P. Justice, and made deed to same, his homestead place in Llano, and taken in payment of same three notes of $750, $1000, $1000, due in 12, 18 and 24 months, with 8 per cent interest from date.   It is especially understood and agreed, however, by both parties that Mr. Justice is not expected to pay said notes, but the real intention is for Moore to be able to sell said notes if he can; if, however, Moore fails to sell said notes and concludes to move back on the place, then Justice agrees to give up the place, and his notes are to be cancelled and returned to him.   Justice is to pay no rents for the use of the place while he occupies it.

" 'W. T. Moore, Jr.'

"The 'homestead place' referred to in said agreement is the property in controversy.

"8.   June 20, 1894, defendant Moore, with his family, removed from Llano to hunt another location and engage in business elsewhere, having in view San Antonio, Texas; Monterey, Mexico; New Orleans, La., and Kansas City, Mo.

"9.   Upon removing from Llano they went to San Antonio and remained there about six weeks, where he entered into negotiations for a home, but did not consummate the deal.   While there he went to Monterey and New Orleans, remaining but a few days in each place.   They were in San Antonio July 10, 1894, the date of the levy.   About August 1, 1894, he went to Kansas City and engaged in business, and was joined by his wife and children some twenty or thirty days later.   Citations in this suit were served on Moore and his wife in Kansas City, September 25, 1894.

"10.   Mrs. Moore and children returned to Llano and occupied the property in controversy, November 5, 1894, and Mr. Moore returned in December following.

"11.   The defendants Moore removed from Llano with the intention not to return and live there again, and this intention existed at the time of their removal, and until after the levy of the execution and sale aforesaid."

We approve and adopt all these findings, except the third, and in lieu of said third finding we copy from the statement of facts evidence introduced by the plaintiff as follows:   "Alias execution issued on July 10, 1894, under said judgment as above set out, to Llano County, and the return of the sheriff of said county, showing that said writ came to hand on July 10, 1894, and was executed on the same day by levying on the following described property as the property of W. T. Moore, Jr., to-wit: lot numbered 43 in block numbered 18, in the old town of Llano, on the south side of the Llano River, in Llano County, Texas," and on July 12, 1894, by advertising the same to be sold before the court house door of Llano County, Texas, on the first Tuesday in August, 1894, it being the 7th day of August, 1894, by an advertisement in the English language, in the Llano News, a newspaper published in said county, once a week for

three consecutive weeks immediately preceding said sale; the first publication of which appeared on the 12th day of July, 1894, the same being not less than twenty days immediately preceding the day of sale," and that said lot was regularly sold on said August 7, 1894, to Miss Minnie M. Johnston, plaintiff in execution for the sum of ten dollars, she being the highest bidder therefor."

*Opinion.*—We have carefully considered the evidence bearing on the question, and cannot say that the finding of the trial court that Moore and wife removed from Llano with the intention not to return and live there again, and that that intention existed at the time appellee's execution was levied on the property, is not supported by the testimony; and, such being the case, they had abandoned all homestead rights, and could not by returning and reoccupying the property as a home defeat the right secured by the levy. It is true they had acquired no other homestead, but such acquisition is not absolutely essential to abandonment of homestead rights. Reece v. Renfro, 68 Texas, 194.

This being strictly an action of trespass to try title, in which no equitable relief was sought by appellants, if the sheriff's sale under which appellee claims was not advertised as required by statute, such irregularity will not defeat appellee's title, notwithstanding the inadequate price for which the land sold. Howard v. North, 5 Texas, 291; Sydnor v. Roberts, 13 Texas, 613; Holmes v. Buckner, 67 Texas, 110; Morris v. Hastings, 70 Texas, 27; Freeman on Executions, 286. These and other authorities announce the rule, that a valid judgment and execution confer upon the sheriff power to make a sale, and when he has made a levy and sold the property at the time and place required by statute, the fact that he may not have given the prescribed notice will not render the sale void. That fact, in connection with others, may render it voidable, and in a proper proceeding it may be set aside; but such a sale is not absolutely null and void. Learned counsel for appellant contends, that while this may be the correct rule when a stranger is the purchaser, a distinction should be made and the sale declared null and void even in a collateral proceeding, when, as in this case, the judgment creditor becomes the purchaser for a grossly inadequate consideration. This argument is based upon the assumption that a sheriff's sale not properly advertised confers no title, unless the vendee be an innocent purchaser for value, without notice that the sale has not been duly advertised; and that the rule to which we have adverted is for the protection of such innocent purchasers, and upon this assumption a very plausible argument is made. The fallacy of the argument lies in its premises. In order to render a sheriff's sale absolutely void, so as to subject it to attack in a collateral proceeding, it must appear that the sheriff had no power or authority to act. If the law had conferred upon him authority to make the sale at the time and place made, although, on account of irregularities, or for other reasons, the sale may be voidable, it is not absolutely void. The authorities cited, we think, settle the proposition, that the statute requir-

ing the sheriff to advertise the sale in a particular manner is not mandatory in the sense that unless complied with he will have no power to sell, and therefore non-compliance with the statute in that respect constitutes a mere irregularity, not absolutely fatal to the authority of the sheriff to sell.

It follows therefore that, whoever may be the purchaser, his relation to the execution under which the sale is made, his knowledge or lack of knowledge concerning the notice given by the sheriff, or the amount paid by him for the property, can have no bearing whatever in determining whether or not the sale is absolutely void. That fact is determined by the conditions existing at the time the sale begins, and is in no wise dependent upon anything that occurs pending or subsequent to the sale.

The case of Weaver v. Nugent, 72 Texas, 273, is relied on by appellant. The report of that case is not satisfactory; but the opinion shows that the defendant tendered to the plaintiff (who had bought the land at sheriff's sale) and deposited in court the amount of purchase money paid by him; and we presume the court regarded the answer as equivalent to a direct proceeding to vacate the sale.

Mrs. Maggie Kirkpatrick testified as follows: "I reside in Palestine, Texas. Resided once in Llano, Texas. I know W. T. Moore, Jr., and his wife, Ida Moore. I met them in Llano about July, 1893. I subsequently resided at their house about nine months. I know that W. T. Moore, Jr., and wife removed from Llano about the latter part of June, 1894; it may have been in July. Mrs. Moore went away on account of the health of herself and children. Mr. Moore went to hunt a new location for residence. I can not recall any conversation in which either of them stated this fact, but this was my impression and belief from my general conversations and intercourse with them. I understood and believed that this removal was to be permanent, but I do not recall any conversation in which either of them explicitly so stated. I never heard them say that they would reside in any particular place. They spoke of a number of places as their possible future home. Among them, San Antonio, Texas; Monterey, Mexico; Kansas City, Mo., and probably New Orleans, and other places. I corresponded with Mrs. Moore. At one time Mrs. Moore wrote me that Mr. Moore was trying to rent a house in Kansas City, Mo. I do not now remember any other thing written as to location. I remember on one occasion that Mr. Moore came home and stated that he had made arrangements with Mr. Justice about the place, but whether this was a sale or not I do not know, nor do I remember to have heard him or Mrs. Moore so definitely state. I can not say definitely how long before they left Llano it was that the statement as to 'arrangement with Mr. Justice' was made; a few weeks I know, but can not state definitely. They were talking about leaving Llano from the time I first began to reside with them to the time of their departure. I do not remember any particular conversation as to their removing permanently from Llano. I have stated the complete substance of my knowledge and understanding in my answers above."

Mrs. Ida Moore, one of the defendants and wife of another, who testified for defendants on question of abandonment of the homestead, replying to a question asked by appellee's counsel, said: "Yes, Mrs. Kirkpatrick knew of our intentions." Appellants objected to Mrs. Kirkpatrick stating that she understood and believed that the removal was to be permanent, because she would not say that she had heard either of the Moores explicitly so state. We think the evidence was admissible. Swenney v. Booth, 28 Texas, 116; Simpson v. Brotherton, 62 Texas, 172.

As she filed no answer to the merits, it was proper to render judgment against A. M. Justice for the land, although there may have been no proof showing that she was the wife of T. P. Justice, nor otherwise connecting her with the property involved.

We have considered all the questions submitted in appellant's brief, and found no reversible error. Judgment affirmed.

*Affirmed.*

Delivered March 18, 1896.

Writ of error refused.